



## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

STEVEN A. CONNER DPM, P.C.,
individually and on behalf
of all others similarly situated,

    Plaintiff,

v.

OPTUM360, LLC,

    Defendant.

**17    1642**

Civil Action No.

**FILED**
APR 1 1 2017
KATE BARKMAN, Clerk
By_____Dep. Clerk

### CLASS ACTION COMPLAINT

Plaintiff, Steven A. Conner DPM, P.C. ("Plaintiff"), brings this action on behalf of itself and all other persons similarly situated and, except for those allegations pertaining to Plaintiff or its attorneys, which are based upon personal knowledge, alleges the following upon information and belief against defendant Optum360, LLC ("Optum360" or "Defendant"):

### PRELIMINARY STATEMENT

1.    Defendant has sent advertisements by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2.    Defendant sent Plaintiff at least one advertisement by facsimile and in violation of the TCPA. Exhibit A. Plaintiff did not expressly consent to receive

1

Defendant's advertisement by fax.

    3.    Defendant's fax fails to convey all the information the TCPA requires a fax recipient must be told. As indicated below, <u>Exhibit A</u> does not contain a compliant opt-out notice.

    4.    Plaintiff brings this action against Defendant on behalf of a class of all persons or entities that Defendant sent one or more telephone facsimile messages ("faxes") about goods, products, or services available for purchase from optumcoding.com or optum360coding.com, seeking statutory damages for each violation of the TCPA, trebling of the statutory damages if the Court determines Defendant's violations were knowing or willful, injunctive relief, compensation and attorney fees (under the conversion count), and all other relief the Court deems appropriate under the circumstances.

    5.    Defendant's unsolicited faxes damaged Plaintiff and the other class members. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. The recipient of a "junk" fax loses the use of its fax machine, and many lose their paper and ink toner in printing the fax. Such an unsolicited fax interrupts the recipient's privacy. A junk fax wastes the recipient's valuable time that would have been spent on something else.

## PARTIES, JURISDICTION, AND VENUE

6.　　Plaintiff, Steven A. Conner DPM, P.C., is a private medical practice in Pittsburgh, Pennsylvania.

7.　　On information and belief, Optum360, LLC is a Delaware limited liability company with its principal place of business in Eden Prairie, Minnesota.

8.　　The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

9.　　Personal jurisdiction exists over Defendant in Pennsylvania because Defendant has transacted business and committed tortious acts within the State.

10.　　Venue is proper in the Eastern District of Pennsylvania, because Defendant committed statutory torts within this District.

## FACTS

11.　　Optum 360 provides revenue cycle management software and services to healthcare providers.

12.　　Defendant sent advertisements by facsimile to Plaintiff and a class of similarly-situated persons. Whether Defendant did so directly or with the assistance of a third party (yet unknown to Plaintiff), Defendant is directly liable for violating the TCPA.

13.　　Plaintiff has received at least one of Defendant's advertisements by facsimile. A true and correct copy of the fax Plaintiff received in October 2015 is attached as Exhibit A.

14.　　Exhibit A is a one-page document Defendant sent by fax about the

3

"2015 Optum360 Essentials Conference," an educational or training program available for purchase from Defendant's website, optumcoding.com, now optum360coding.com.

15.     Exhibit A promotes Optum360's name, address, website, and contact information.

16.     Exhibit A advertises the commercial availability or quality of property, goods, or services at optumcoding.com.

17.     The     webpage     "optumcoding.com"     pushes     through     to "optum360coding.com."

18.     Exhibit A does not include the opt-out notice required by the TCPA. See 47 U.S.C. § 227 (b) (2) (D) & (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v).

19.     On information and belief, Defendant sent advertisements by facsimile to Plaintiff and more than 39 other persons in violation of the TCPA.

20.     Plaintiff and the other class members owe no obligation to protect their fax machines from Defendant. Their fax machines are ready to send and receive their urgent communications, or private communications about patients' medical needs, not to receive Defendant's unlawful advertisements.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action on behalf of itself and all others similarly situated as members of a class, initially defined as follows:

> Each person or entity that was sent one or more telephone facsimile messages ("faxes") about goods, products, or services available for purchase from optumcoding.com or optum360coding.com.

4

Plaintiff reserves the right to modify the proposed class definition or propose subclasses after discovery about Defendant's fax advertising program and will do so through a motion for class certification pursuant to Fed. R. Civ. P. 23.

22.    Excluded from the class are Defendant, each of Defendant's officers, directors, legal representatives, heirs, successors, and assigns, any entity in which Defendant has a controlling interest, any parent, subsidiary or affiliated company of Defendant's, and any Judge assigned to this action, including his or her immediate family.

23.    In this action, Plaintiff intends to discover, include, and resolve the merits of claims about all advertisements Defendant sent to Plaintiff by fax, as well as all advertisements Defendant sent to the other class members.

24.    Defendant's fax advertising program involved other, substantially-similar advertisements sent to increase purchases from Defendant's website, optumcoding.com or optum360coding.com. Plaintiff intends to locate those advertisements in discovery. Exhibit B, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

25.    This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any

individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

26. **Numerosity/impracticality of joinder.** On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiff, but will be obtained from Defendant's records or the records of third parties.

27. **Commonality and predominance.** There is a well-defined community of interest and common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

      a.    Whether Exhibit A and other yet-to-be-discovered facsimiles sent by or on behalf of Defendant advertised the commercial availability or quality of property, goods or services;

      b.    Whether Defendant sent advertisements by facsimile promoting the commercial availability or quality of property, goods, or services;

      c.    The manner and method Defendant used to compile or obtain the list(s) of fax numbers to which it sent fax advertisements;

      d.    Whether Plaintiff and the other class members should be awarded statutory damages;

6

e.   If the Court finds that Defendant willfully or knowingly violated the TCPA, whether the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than three times the amount;

f.   Whether the Court should enjoin Defendant from faxing advertisements in the future; and

g.   Whether Defendant's conduct as alleged herein constituted conversion.

28.   **Typicality of claims.** Plaintiff's claims are typical of the claims of the other class members, because Plaintiff and all class members were injured by the same wrongful practices. Plaintiff and the members of the class were sent Defendant's advertisements by facsimile and those advertisements did not contain the opt-out notice required by the TCPA. Under the facts of this case, because the focus is upon Defendant's conduct, if Plaintiff prevails on its claims, then the other putative class members will prevail as well.

29.   **Adequacy of representation.** Plaintiff is an adequate representative of the class because its interests do not conflict with the interests of the class it seeks to represent. Plaintiff has retained undersigned counsel, who are competent and experienced in complex class action litigation, and in TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

30.   **Prosecution of separate claims would yield inconsistent results.** Even

7

though the questions of fact and law in this action are predominantly common to Plaintiff and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendant to operate under if/when class members bring additional lawsuits concerning the same unsolicited fax advertisements or if Defendant chooses to advertise by fax again in the future.

31.    **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

32.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

8

33.   Plaintiff brings Count I on behalf of itself and a class of similarly situated persons against Defendant.

34.   The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine...." 47 U.S.C. § 227 (b) (1).

35.   The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

36.   The TCPA provides a private right of action as follows:

> 3.   <u>Private right of action</u>. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
>> (A)   An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>>
>> (B)   An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>>
>> (C)   Both such actions.

47 U.S.C. § 227 (b) (3).

37.   The Court, in its discretion, may treble the statutory damages if it determines that a violation was knowing or willful. 47 U.S.C. § 227 (b) (3).

38.   The TCPA requires that every advertisement sent by facsimile must include an opt-out notice clearly and conspicuously displayed on the bottom of its

first page. 47 U.S.C. § 227 (b) (2) (D) and (E); 47 C.F.R. § 64.1200 (a) (4).

39.    The TCPA expressly mandates the form and content of an opt-out

notice. 47 U.S.C. § 227 (b) (2) (D) & (E), in relevant part, states:

> In implementing the requirements of this subsection, the Commission
> ...
>
> (D) shall provide that a notice contained in an unsolicited
> advertisement complies with the requirements under this
> subparagraph only if...
>
> (i) the notice is clear and conspicuous and on the first page of the
> unsolicited advertisement;
>
> (ii) the notice states that the recipient may make a request to the
> sender of the unsolicited advertisement not to send any future
> unsolicited advertisements to a telephone facsimile machine or
> machines and that failure to comply, within the shortest reasonable
> time, as determined by the Commission, with such a request meeting
> the requirements under subparagraph (E) is unlawful;
>
> (iii) the notice sets forth the requirements for a request under
> subparagraph (E);
>
> (iv) the notice includes—
>
>> (I) a domestic contact telephone and facsimile machine number
>> for the recipient to transmit such a request to the sender; and
>>
>> (II) a cost-free mechanism for a recipient to transmit a request
>> pursuant to such notice to the sender of the unsolicited
>> advertisement; the Commission shall by rule require the sender
>> to provide such a mechanism and may, in the discretion of the
>> Commission and subject to such conditions as the Commission
>> may prescribe, exempt certain classes of small business senders,
>> but only if the Commission determines that the costs to such
>> class are unduly burdensome given the revenues generated by
>> such small businesses;
>
> (v) the telephone and facsimile machine numbers and the cost-free
> mechanism set forth pursuant to clause (iv) permit an individual or
> business to make such a request at any time on any day of the week;
> and

(vi) the notice complies with the requirements of subsection (d) of this section;

(E) shall provide, by rule, that a request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if—

    (i) the request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

    (ii) the request is made to the telephone or facsimile number of the sender of such an unsolicited advertisement provided pursuant to subparagraph (D)(iv) or by any other method of communication as determined by the Commission; and

    (iii) the person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine;

40.    The FCC's regulations at 47 C.F.R. § 64.1200 (a) (4) (iii) & (v) expressly require the following:

    (iii) The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if -

        (A) The notice is clear and conspicuous and on the first page of the advertisement;

        (B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(4)(v) of this section is unlawful;

        (C) The notice sets forth the requirements for an opt-out request under paragraph (a)(4)(v) of this section;

        (D) The notice includes -

11

(1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and

(2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or email address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and

(E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

...

(v) A request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if -

(A) The request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

(B) The request is made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement; and

(C) The person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine.

41.     Here, Defendant violated 47 U.S.C. § 227 (b) (1) (C) by sending an advertisement by facsimile (such as <u>Exhibit A</u>) to Plaintiff and the other class members without their prior express invitation or permission.

42.     Defendant violated 47 U.S.C. § 227 (b) (2) (D) and (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v) by failing to include a compliant opt-out notice. <u>Exhibit A</u>.

12

43.    Defendant's notice fails to clearly state that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines. Instead, Defendant's fax tells the recipient that he/she/it may "update" their information.

44.    Exhibit A does not state that Defendant's failure to comply with an opt-out request within 30 days is unlawful. Instead, Defendant's fax states "updates to your fax preferences will be made within 30 days of contacting Optum 360."

45.    Defendant's notice is not conspicuous. Rather, Defendant's notice is in the smallest font on the page and placed with Defendant's legal notices regarding its trademarks. Defendant's notice is not set apart from its other disclosures by font, bold, italics, underline, capital letters, or asterisk or other symbols. The tiny font is overwhelmed by other large, bold font on the page stating "Why should you go?", "REGISTER TODAY!", "Register now.", and "We're back in Vegas, baby!" Defendant's notice is not even centered at the bottom of the page, but is instead flanked on the right by bold, separated information for Defendant's use. Exhibit A.

46.    Exhibit A does not inform the recipient that he/she/it has a legal right to request that Defendant not send any future fax.

47.    Exhibit A does not inform the recipient that he/she/it must identify the telephone number to which the opt-out request relates. Some persons have multiple fax numbers. Exhibit A does not indicate the targeted fax number in its header or otherwise.

48.    Exhibit A does not inform the recipient that the opt-out request will be

valid only unless and until the person making the request has provided, subsequent to the request, express invitation or permission to the sender, in writing or otherwise, to send such advertisement to such person at such telephone facsimile machine.

49.     Exhibit A does not specify whether the toll-free telephone number provided in the opt-out notice is staffed and available to Plaintiff and the class members 24-hours a day, 7 days a week.

50.     The opt-out information on Exhibit A is not "clear" as required by the TCPA. Instead, it includes language that is inconsistent with the law, falsely implies that Plaintiff and some other class members previously invited or consented to receive fax advertisements from Optum360—"if you would no longer like to receive fax communications." Exhibit A.

51.     Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice provides recipients the necessary information to opt-out of future fax transmissions, including a notice that the sender's failure to comply with the opt-out request will be unlawful. 47 C.F.R. § 64.1200 (a) (4) (iii).

52.     The TCPA is a strict liability statute and Defendant is liable to Plaintiff and the other class members even if Defendant's actions were negligent. 47 U.S.C. § 227 (b) (3).

53.     Even if Defendant did not intend to injure Plaintiff and the other class members, did not intend to violate their privacy, and did not intend to waste their

valuable time with Defendant's advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

54.    If Defendant's actions were knowing or willful, then the Court has the discretion to increase the statutory damages up to 3 times the amount. 47 U.S.C. § 227 (b) (3).

55.    Defendant is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, or the faxes were sent on its behalf.

56.    Defendant's actions damaged Plaintiff and the other class members. Receiving Defendant's junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendant's faxes. Defendant used the fax machines of Plaintiff and the other class members. The subject faxes wasted Plaintiff's valuable time; time that otherwise would have been spent on Plaintiff's business activities. Defendant's faxes unlawfully interrupted Plaintiff and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of unlawful fax advertisements occurred outside Defendant's premises.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendant as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award $500.00 in statutory damages for each of Defendant's violations of the TCPA;

C.     That, if it finds Defendant willfully or knowingly violated the TCPA, the Court exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount (Plaintiff requests trebling);

D.     That the Court enter an injunction prohibiting Defendant from violating the TCPA; and

E.     That the Court award costs and such further relief as the Court may deem just and proper.

**COUNT II
CONVERSION**

57.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

58.    Plaintiff brings Count II on behalf of itself and a class of similarly situated persons and against Defendant.

59.    By sending advertisements to their fax machines, Defendant improperly and unlawfully converted the class's fax machines to Defendant's own use. Where printed (as in Plaintiff's case), Defendant also improperly and unlawfully converted the class members' paper and toner to Defendant's own use. Defendant also converted Plaintiff's time to Defendant's own use, as they did with the valuable time of the other class members.

60.    Immediately prior to the sending of the unsolicited faxes, Plaintiff and

16

the other class members each owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

61.     By   sending   them   unsolicited   faxes,   Defendant   permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

62.     Defendant knew or should have known that their misappropriation of paper, toner, and employee time was wrongful and without authorization.

63.     Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendant.

64.     Defendant's unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendant's illegal faxes. Defendant knew or should have known employees' time is valuable to Plaintiff.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendant as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award appropriate damages;

C.     That the Court award punitive damages;

17

D.     That the Court award attorney's fees;

E.     That the Court award costs of suit; and

F.     That the Court award such further relief as it may deem just and proper under the circumstances.

Respectfully submitted,

Steven A. Conner DPM, P.C., individually and as the representative of a class of similarly-situated persons

By: /s/ Richard Shenkan
       One of its attorneys

Richard Shenkan (PA 79800)
Shenkan Injury Lawyers, LLC
P.O. Box 7255
New Castle, PA 16107
(248) 562-1320
(888) 769-1774 (fax)
rshenkan@shenkanlaw.com

Phillip A. Bock (*pro hac vice* to be submitted)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
(312) 658-5500
(312) 658-5555 (fax)
phil@classlawyers.com

18

# EXHIBIT A



# NAVIGATING THE NEW FRONTIER
Destination: Coding, billing and compliance excellence

## 2015 Optum360™ Essentials Conference

Don't miss out on the 15th Annual Optum360™ Essentials Coding, Billing and Compliance Conference. You'll leave this game-changing event more focused, thinking more strategically and with the knowledge to navigate the new frontier of coding.

## Why should you go?

- Choose from up to 40 educational sessions
- Earn up to 16 CEUs
- Learn from nationally recognized experts on medical coding, billing and compliance

- Learn about the CPT® code updates
- Focus on ICD-10 with specialty sessions dedicated to your practice
- Stay current with updates on 2016 ICD-10-CM & PCS, CPT®, HCPCS, DRG codes, IPPS and OPPS

- Attend vetted presentations that are reviewed and approved by legal and clinical experts
- Network with a wide spectrum of medical professionals, from entry-level to expert understanding

## REGISTER TODAY!



Register by visiting
**optumcoding.com/essentials**

**Registration Fees: $725**
**1/2 Day Workshop Add-on: $350**

**Earn up to 16 CEUs this year**
Only Optum360 delivers high-quality, continuing education and industry-leading ICD-10 preparation at this level and price. Your conference registration provides up to 16 CEUs, industry-leading education, some meal and beverage/snack breaks, and take-home PowerPoints for all the sessions.

**Nov. 30–Dec. 3, 2015**
The Cosmopolitan™
Hotel, Las Vegas
**We're back in Vegas, baby!**

## Register now.
**Visit:** optumcoding.com/essentials
**Call:** 1-510-463-6073
**Email:** optumECBC@streamlinevents.com



**OPTUM360°**

Optum360™    FIFTEENTH ANNUAL
**ESSENTIALS**
CODING, BILLING & COMPLIANCE CONFERENCE

Optum360 respects your right to privacy. If you would no longer like to receive fax communications, please visit optumcoding/modules/contactfaxpreferences.asp, call 1-800-464-3649, option 1, or fax 801-982-4033 to update your information. As required by law, updates to your fax preferences will be made within 30 days of contacting Optum360.

Property of Optum360, LLC. Optum360 and the Optum360 logo are trademarks of Optum360, LLC. All other brand or product names are trademarks or registered trademarks of their respective owner.

CPT is a registered trademark of the American Medical Association.

© 2015 Optum360, LLC. All rights reserved. OPTPRJ9630

Customer number
1558064

Contact number
1480330

# EXHIBIT B

# BOCK, HATCH, LEWIS & OPPENHEIM, LLC

134 North La Salle Street, Suite 1000

Chicago, IL 60602

312-658-5500 (Phone) • 312-658-5555 (Fax)

**April 11, 2017**

In re: *Steven A. Conner DPM,, P.C. v. Optum360, LLC.* (ED Pennsylvania).

### Demand for Preservation of All Tangible Documents
### Including Electronically Stored Information

As part of the Class Action Complaint against Optum360, LLC ("Defendant"), plaintiff, Steven A. Conner DPM, P.C., hereby issues a demand for Defendant to preserve all tangible documents, including electronically stored information.

As used in this document, "you" and "your" refers to each Defendant, and its predecessors, successors, parents, subsidiaries, divisions or affiliates, and its respective officers, directors, agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions.

You should anticipate that much of the information subject to disclosure or responsive to discovery in this matter is stored on your current and former computer systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

• Digital communications (e.g., e-mail, voice mail, instant messaging);
• Word processed documents (e.g., Word or WordPerfect documents and drafts);
• Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
• Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
• Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
• Sound Recordings (e.g., .WAV and .MP3 files);
• Video and Animation (e.g., .AVI and .MOV files);
• Databases (e.g., Access, Oracle, SQL Server data, SAP);
• Contact and Relationship Management Data (e.g., Outlook, ACT!);

1

- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and,
- Back Up and Archival Files (e.g., Zip, .GHO)

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to amendments to the Federal Rules of Civil Procedure that have been approved by the United States Supreme Court (eff. 12/1/05), you must identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, the court may then order production of the ESI, even if it finds that it is not reasonably accessible. Accordingly, even ESI that you deem reasonably inaccessible must be preserved in the interim so as not to deprive the plaintiffs of their right to secure the evidence or the Court of its right to adjudicate the issue.

### A.    Preservation Requires Immediate Intervention

You must act immediately to preserve potentially relevant ESI regarding the time period of March 2013 to the date You receive this letter. Potentially relevant ESI includes, but is not limited to information:

1. Regarding the events and causes of action described in Plaintiff's Class Action Complaint; and
2. Regarding Your claims or defenses to Plaintiff's Class Action Complaint.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI. Nothing in this demand for preservation of ESI should be understood to diminish your

concurrent obligation to preserve document, tangible things and other potentially relevant evidence.

### B.   Suspension of Routine Destruction

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

• Purging the contents of e-mail repositories by age, capacity or other criteria;
• Using data or media wiping, disposal, erasure or encryption utilities or devices;
• Overwriting, erasing, destroying or discarding back up media;
• Re-assigning, re-imaging or disposing of systems, servers, devices or media;
• Running antivirus or other programs effecting wholesale metadata alteration;
• Releasing or purging online storage repositories;
• Using metadata stripper utilities;
• Disabling server or IM logging; and,
• Executing drive or file defragmentation or compression programs.

### C.   Guard Against Deletion

You should anticipate that your employees, officers or others may seek to hide, destroy or alter ESI and act to prevent or guard against such actions. Especially where company machines have been used for Internet access or personal communications, you should anticipate that users may seek to delete or destroy information they regard as personal, confidential or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to you or your employees and officers. It's simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

### D.   Preservation by Imaging

You should take affirmative steps to prevent anyone with access to your data, systems and archives from seeking to modify, destroy or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified

3

image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file.

With respect to the hard drives and storage devices of each of the persons named below and of each person acting in the capacity or holding the job title named below, as well as each other person likely to have information pertaining to the instant action on their computer hard drive(s), demand is made that you immediately obtain, authenticate and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by that person during the period from March 2013 to today's date as well as recording and preserving the system time and date of each such computer.

Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. Each such image should be preserved without alteration.

### E.      Preservation in Native Form

You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

### F.      Metadata

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless

4

handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

## G.    Servers

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downed or must be online 24/7. If you question whether the preservation method you pursue is one that we will accept as sufficient, please call to discuss it.

## H.    Home Systems, Laptops, Online Accounts and Other ESI Venues

Though we expect that you will act swiftly to preserve data on office workstations and servers, you should also determine if any home or portable systems may contain potentially relevant data. To the extent that officers, board members or employees have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and the user's PDA, smart phone, voice mailbox or other forms of ESI storage.). Similarly, if employees, officers or board members used online or browser-based email accounts or services (such as AOL, Gmail, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

## I.    Ancillary Preservation

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like.

You must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI. You must preserve any cabling, drivers and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access

5

or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

### J.     Paper Preservation of ESI is Inadequate

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

### K.     Agents, Attorneys and Third Parties

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

### L.     System Sequestration or Forensically Sound Imaging

We suggest that, with respect to Defendant removing their ESI systems, media and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step. In the event you deem it impractical to sequester systems, media and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss.

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including the so-called "unallocated clusters," holding deleted files.

### M.     Preservation Protocols

We are desirous of working with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol,

6

if you will furnish an inventory of the systems and media to be preserved. Else, if you will promptly disclose the preservation protocol you intend to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at your disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective expert(s) can work cooperatively to secure a balance between evidence preservation and burden that's fair to both sides and acceptable to the Court.

## N.   Do Not Delay Preservation

I'm available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

## O.   Confirmation of Compliance

Please confirm that you have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action. If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.


Respectfully,


Phillip A. Bock
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. LaSalle St., Suite 1000
Chicago, IL 60602
512-739-0390 (cell)
312-658-5515 (direct)
todd@classlawyers.com